Filed 9/1/21  P. v. Price CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B302565 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA415163) |
| v. | |
| ANDRE PRICE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted appellant Andre Price of second degree murder in 2014. We affirmed that conviction in 2016 in our prior, unpublished opinion, *People v. Price* (Aug. 8, 2016, B262143) (unpub. opn.). In 2019, appellant filed a petition for resentencing under Penal Code section 1170.95.[1] After appointment of counsel, briefing, and a hearing, the trial court denied the petition, finding that appellant was ineligible for relief because he was necessarily convicted as an aider and abettor to the murder. In this appeal from the denial of his resentencing petition, appellant argues that the jury might have relied on a felony murder theory and therefore might not have found that he acted with the requisite malice to support his conviction. We affirm.

## BACKGROUND

### I.   Factual Background

The underlying facts presented at trial are discussed in detail in our prior opinion. We summarize them here as relevant to the instant appeal.

Appellant was a friend of Rodney Longmiyer. Longmiyer's cousin, Andrea Fowler, was a friend of the victim, Jeffrey Davis. The prosecution's theory at trial was that appellant, Longmiyer, and Fowler planned to rob Davis, that in the course of that robbery, appellant assaulted Davis, and that Longmiyer or appellant then fatally shot him.

The shooting occurred on August 2, 2012 at around 1:30 p.m. A witness heard two gunshots from the alley behind her apartment building; a few seconds later, she saw three cars in the alley containing individuals she believed were African-American males. She described one of the cars as a four-door, compact car, like a

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Honda or Nissan, and another as a black or blue sedan, "like a Thunderbird."

Fowler called 911 at 1:32 p.m. from her home phone. She reported that she and Davis were in the alley when "some guy started to rob us" and then "somebody shot my friend." Fowler and Davis drove to the hospital in a Mazda 6, which was later secured by police. Davis was pronounced dead at the hospital from a gunshot wound to the chest. The medical examiner testified that the death was a homicide and that there was a muzzle imprint at the entry wound, meaning that the tip of the gun "was in contact with the skin when it was discharged." The police recovered Davis's cell phone from under the driver's seat of the Mazda 6.

Davis sustained other injuries shortly before his death: a red contusion above his right eye, contusions to the inside of both his upper and lower lips, bruising on the right and left side of the scalp, two three-inch abrasions across his left upper chest, a dark abrasion on the back of his right shoulder near the top, two separate bruises on the top of his right hand, an abrasion on his right palm below the thumb, and several abrasions on his left leg and knee. Based on his injuries, the medical examiner opined that Davis was involved in a physical struggle. The injuries to Davis's hand indicated that "there were either punches thrown or attempts to ward off injury by trying to block a blow or an attack." DNA swabs taken from Davis's right knuckle contained appellant's DNA. A defense DNA expert testified about different types of DNA transfer, and acknowledged during cross-examination that a punch could transfer one person's DNA to the other's knuckles.

Longmiyer's girlfriend testified that in August of 2012, Longmiyer was driving their black 2004 Pontiac Grand Prix; the car was registered under appellant's name. From her cell phone

3

contacts, she identified appellant's phone number and Fowler's cell phone number. The prosecution presented extensive phone record evidence, which showed multiple calls and text messages among appellant's and Longmiyer's cell phones on the day of the shooting from around 8:00 a.m. until around the time of the shooting. At 1:18 p.m., Davis's phone was used to call Longmiyer's phone (the only call made between those phones). Video surveillance from a liquor store near the scene of the shooting showed Davis getting out of a car and going into the store at 1:17 p.m., and Fowler following him a few minutes later. The video showed Fowler and Davis leaving the store parking lot in a car at 1:25 p.m., heading toward the alley.

The phone records also showed the cell towers used for each call. Between 1:17 and 1:32 p.m., Longmiyer's calls to and from Fowler's and Davis's phones all used a cell tower less than half a mile from the shooting. After that time, Longmiyer's phone moved away from the site of the shooting.

## II. Procedural History

### A. *Trial and Direct Appeal*

In 2013, appellant was charged with the murder of Jeffrey Davis (§ 187, subd. (a), count 1) and possession of a firearm by a felon (§ 29800, subd. (a)(1), count 2). The information further alleged that appellant personally and intentionally discharged a firearm causing great bodily injury and death (§ 12022.53, subds. (b)-(d)), and also included gang (§ 186.22, subd. (b)(1)(A))[2] and prior conviction allegations (§ 667, subds. (a)(1), (b)-(j)).

The trial court instructed the jury on first degree felony murder (CALCRIM Nos. 540A, 540B), in accordance with the

---

[2] The court later struck the gang allegations upon motion by the prosecution.

4

prosecution's primary theory that Davis was shot by appellant or Longmiyer during the commission of an attempted robbery. The court also instructed the jury regarding first and second degree murder with malice aforethought (CALCRIM Nos. 520, 521) and aiding and abetting (CALCRIM Nos. 400, 401).

On May 8, 2014, the jury found appellant not guilty of first degree murder on count 1, but guilty of the lesser-included offense of second degree murder. The jury found not true the firearm enhancement on count 1, and acquitted appellant on count 2 of possession of a firearm by a felon. Following a bifurcated court trial, the court found true the allegations regarding appellant's prior felony conviction, and sentenced appellant to 35 years to life.

Appellant appealed his conviction. In our prior opinion, we found that "[i]n acquitting defendant of first degree murder, the jury implicitly failed to find that defendant engaged in a robbery or attempted robbery beyond a reasonable doubt. The jury also found the gun use enhancement not true thus failing to find beyond a reasonable doubt that defendant personally used a gun against Davis." We concluded that substantial evidence supported appellant's conviction for second degree murder under an aiding and abetting theory. First, we found that the evidence that Davis was shot in the chest at point blank range was sufficient to establish malice of the shooter; moreover, given the evidence placing Longmiyer at or near the scene, we found that "a jury could reasonably infer that Longmiyer shot Davis and thereby committed second degree murder." Second, we concluded there was "substantial evidence at trial to support the inference that [appellant] knowingly and intentionally aided and abetted Longmiyer in the murder."

## B.  *Petition for Resentencing*

On January 2, 2019, appellant filed a petition for resentencing under section 1170.95.  On the form petition, he checked the boxes asserting that he was convicted of second degree murder under the natural and probable consequences doctrine or the felony murder doctrine, could not now be convicted of murder because of changes to section 188, and that there had "been a prior determination by a court or jury that I was not a major participant and/or did not act with reckless indifference to human life," so that he was entitled to be resentenced pursuant to section 1170.95, subdivision (d)(2).  Appellant also checked the box requesting the appointment of counsel.

The prosecution filed a response.  It  argued that appellant was ineligible for resentencing because he was convicted of second degree murder "as an aider and abettor to the actual shooter," and not based on felony murder or the natural and probable consequences doctrine.  It further argued that the jury "was not even instructed on second degree felony murder or natural and probable consequences."

The court appointed counsel for appellant.  Appellant filed a reply addressing the prosecution's arguments regarding the constitutionality of section 1170.95.  Shortly afterward, appellant filed a petition with the court seeking to represent himself for the resentencing proceedings.

At a hearing on November 8, 2019, the court granted his request.  With appellant proceeding in propria persona, the court held a hearing on the section 1170.95 petition.  Appellant argued that the prosecutor had proceeded at trial under the theory that he was the shooter, or was guilty under a felony murder theory for participating in the attempted robbery of the victim, but that the

6

jury had rejected the first theory when it found him not guilty of using the gun.

The court stated it had reviewed the jury instructions given, including instructions on aiding and abetting, and concluded that since the jury rejected the allegation regarding personal use of the firearm, "obviously, the only theory that would have supported your conviction would have been as an aider and abettor." Citing our prior opinion, the court noted that the prosecution advanced a theory of first degree felony murder, and that the trial court also instructed the jury "regarding first and second-degree murder with malice aforethought and aiding and abetting." The court therefore told appellant that "the only theory that was sustained at your trial was aiding and abetting . . . [The prosecution] did argue that below. The instructions were given. And you were convicted of that. . . . Had you been convicted of felony murder, we might have been in a different position, but you weren't." The court concluded that the "only explanation" for appellant's conviction was "as an aider and abettor. There's no other legal basis for that. . . . Because of that you're not entitled to relief under this statute." Accordingly, the court denied the petition, finding that appellant was ineligible for relief because he was convicted as an aider and abettor and not pursuant to the felony murder rule or natural and probable consequences doctrine.

Appellant timely appealed.

## DISCUSSION

### I.    Governing Law

In 2018, the Legislature enacted Senate Bill No. 1437 (SB 1437), the primary purpose of which is to align a person's culpability for murder with his or her own actions and subjective mens rea. (See Stats. 2018, ch. 1015, § 1, subd. (g).) To effectuate that

7

purpose, SB 1437 amended sections 188 and 189. As amended, section 188, subdivision (a)(3) now provides that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  Section 189 now provides that a participant in qualifying felonies during which a death occurs generally will not be liable for murder unless (1) he or she was "the actual killer," (2) he or she, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) he or she "was a major participant in the underlying felony [who] acted with reckless indifference to human life."  (§ 189, subds. (e)(1)-(3).)  The effect of these changes was to restrict the application of the felony murder rule and the natural and probable consequences doctrine as applied to murder.  (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.)  "Felony murder and aiding and abetting a murder remain crimes, but to be convicted of murder it isn't enough to participate in a felony that results in a death.  Now, a person so accused must have killed the victim, aided the person who did kill the victim with the intent to kill them, or acted as a major participant in the felony with reckless indifference to human life."  (*People v. Johns* (2020) 50 Cal.App.5th 46, 54.)

SB 1437 also added section 1170.95 to the Penal Code. Section 1170.95 permits a person convicted of murder on a charging document that allowed the prosecution to argue felony murder or the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and resentence on any remaining counts if the person could not be convicted of murder under sections 188 and 189 as amended by SB 1437.  (§ 1170.95, subd. (a).)

8

A petition for relief under section 1170.95 must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) If any of this information is missing "and cannot be readily ascertained by the court," the court may deny the petition without prejudice. (§ 1170.95, subd. (b)(2).)

If the petition contains the required information, then the court proceeds to subdivision (c) to assess whether the petitioner has made "a prima facie showing" for relief. (§ 1170.95, subd. (c); see also *People v. Lewis* (July 26, 2021, S260598) __Cal.5th __ [2021 WL 3137434] at *2–3 (*Lewis*)). In *Lewis*, our Supreme Court recently determined that subdivision (c) requires a "single" process to assess the prima facie showing, including appointing counsel if requested by petitioner, and briefing by the parties. (*Id.* at *4; see also § 1170.95, subd. (c).)[3]

The court may look at the record of conviction, including a prior appellate opinion, to determine whether a petitioner has made a prima facie case for relief under section 1170.95. (*Lewis, supra*, at *10; see also *People v. Edwards* (2020) 48 Cal.App.5th 666, 674–675, abrogated on other grounds by *Lewis, supra,* at *5-6 [court can review "readily available record of conviction" including "charging information and jury instructions"]; *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110.) However, "the prima facie inquiry under

---

[3] *Lewis,* decided after briefing was completed in this appeal, rejected the "two-step" prima facie process previously embraced by many courts. (See *Lewis, supra*, at *4.) This holding is not at issue here, as the trial court appointed counsel for appellant and allowed briefing and a hearing prior to finding appellant ineligible for relief.

subdivision (c) is limited. . . . "'[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.'"  [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Lewis, supra*, at *10, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 978, abrogated on other grounds by *Lewis, supra,* at *5-6.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra*, at *11.)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.'  (§ 1170.95, subd. (d)(1).)  'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.'  (§ 1170.95, subd. (d)(3).)  At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'  (§ 1170.95, subd. (d)(3).)"  (*Lewis, supra*, at *3.)

We review de novo the predominantly legal question of whether a petitioner has made a prima facie showing.  (See *Drayton,*

10

*supra*, 47 Cal.App.5th at p. 981; see also *Smiley v. Citibank, N.A.* (1995) 11 Cal.4th 138, 146 ["Independent review is called for when the underlying determination involves a purely legal question or a predominantly legal mixed question."].)[4]

## II.    Analysis

Appellant contends that the trial court erred in denying his petition because some jurors might have found him guilty under the felony murder rule.  We disagree.  The court correctly found appellant ineligible for relief under section 1170.95 as a matter of law because he was convicted of second degree murder as an aider and abettor, not under a felony murder theory.

To be eligible for relief, appellant must make a prima facie showing that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)  A direct aider and abettor can be convicted of murder notwithstanding the amendments to sections 188 and 189, because such persons necessarily "know and share the murderous intent of the actual perpetrator."  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; see

---

[4] The parties disagree as to the stage at which the court denied appellant's petition.  Respondent argues that the court did so at the prima facie stage under section 1170.95, subdivision (c), while appellant contends that the court proceeded to the hearing and engaged in factfinding under subdivision (d).  There is no indication in the record that the court issued an order to show cause or held a hearing under subdivision (d) at which the parties were able to present new or additional evidence.  The court permitted the parties to present argument and relied on the record of conviction, consistent with its duties at the prima facie stage under subdivision (c).  In any event, appellant does not raise a procedural challenge on appeal and argues that the result would be the same at either stage.

*People v. Gentile* (2020) 10 Cal.5th 830, 848 [SB 1437 "does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought."].) "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.) Accordingly, appellant was required to make a prima facie showing that he was not convicted as a direct aider and abettor and thereby fell within the provisions of the statute. (§ 1170.95, subds. (a)(3) & (c).) He failed to do so.

In our prior opinion, we found that the jury necessarily convicted appellant of second degree murder under an aiding and abetting theory, and that substantial evidence supported that finding. The court properly relied on that finding in concluding that appellant was ineligible for resentencing under section 1170.95. (See *Lewis, supra*, at *5-6 [holding that "a trial court can rely on the record of conviction," and "[a]ppellate opinions . . . are generally considered to be part of the record of conviction"].) Because he was convicted under a direct theory requiring a finding of malice, appellant was not entitled to relief as a matter of law.

Appellant does not challenge the court's reliance on our prior opinion. He also acknowledges that "there was a general understanding among the parties that the prosecution was using felony murder only in conjunction with first degree murder." However, he argues that the court erred by failing to consider the possibility that some of the jurors disregarded the jury instructions given and "may have based their guilty verdict on an illegal theory (i.e., second degree felony murder)." He cites no authority for this proposition. To the contrary, we presume the jury followed the

12

instructions it was given.  (See *People v. Prince* (2007) 40 Cal.4th 1179, 1295; *People v. Holt* (1997) 15 Cal.4th 619, 662.)

Here, the jury was instructed it could find appellant guilty of first degree murder based on either a theory of malice murder—as the perpetrator or an aider and abettor—or under a felony murder theory based on an underlying robbery or attempted robbery.  If it found appellant not guilty of first degree murder, the jury was instructed that it could find appellant guilty of the lesser crime of second degree malice murder, again as the perpetrator or an aider and abettor.  The prosecution's theory at trial relied primarily on first degree felony murder, which the jury rejected.  Appellant has failed to supply any evidence to suggest that the jury did not follow its instructions in finding that appellant possessed the requisite malice to support a conviction for second degree murder.  His suggestion that the jury "could have been confused" is mere speculation; he does not point to any evidence or argument during the trial to support it.  Moreover, the jury instructions regarding felony murder were expressly linked to liability for first degree murder.  (See CALCRIM No. 540A [instructing on the elements required to "prove that the defendant is guilty of first degree murder under [a felony murder] theory"]; *ibid*. [instructing jury to apply robbery or attempted robbery instructions "when you decide whether the People have proved first degree murder under a theory of felony murder"].)

Appellant also notes that the jurors were instructed that they did not have to agree on the same theory of liability and suggests this could have resulted in some jurors relying on felony murder for a second degree murder conviction.  The jury was instructed that appellant was being prosecuted for first degree murder under "two theories:  (1) malice aforethought, and (2) felony murder," and that it

13

could not convict appellant "unless all of you agree that the People have proved that the defendant committed murder under at least one of these theories. You do not all need to agree on the same theory." (CALCRIM No. 548.) But here, the jury rejected *both* theories of guilt for first degree murder when it found appellant not guilty of that charge. The jury was not instructed that it could apply a felony murder theory to any charge other than first degree murder and there is no evidence suggesting that any juror impermissibly relied on felony murder to convict appellant of second degree murder.

Appellant is not assisted by his reliance on two notes submitted by the jury during deliberation. On May 7, 2014, the jury submitted the following question to the trial court: "Would another felony, such as felony assault, be a basis for felony murder[?] What is the basis for felony assault?" The trial court responded: "Assault cannot form the basis of felony murder." The following day, the jury submitted a second note, reporting that it was "[h]ung on murder count 1 first degree," and asking: "Can we convict [appellant] for aiding & abetting 2nd degree murder[?]" In response, the trial court referred the jury to the instructions already given. Appellant speculates that these questions show that the jury was "having a difficult time coming to an agreement on the theory of liability," and ultimately arrived at a "compromised verdict" that could have included some jurors relying on felony murder instead of finding malice. We are not persuaded. If anything, these questions support the conclusion that the jury ultimately found appellant guilty of second degree murder as an aider and abettor, particularly after the trial court informed the jury it could *not* use assault as an alternative basis for felony murder and that it *could* convict appellant as an aider and abettor for second degree murder.

14

Thus, the record of appellant's conviction established he was ineligible for relief under section 1170.95 as a matter of law based on the jury's findings rejecting first degree felony murder and convicting appellant of second degree murder as an aider and abettor. The court accordingly did not err in denying appellant's petition.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, ACTING P.J.

CURREY, J.

15